# UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF MICHIGAN

DANIEL W. RUDD,

       Plaintiff,

  v.

HON. GREGORY C. PITTMAN,

      Defendant.

Case No.  1:20-cv-27

Hon. Paul L. Maloney
U.S. District Court Judge

Hon. Sally J. Berens
Magistrate Judge

---

# PLAINTIFF'S BRIEF OPPOSING DEFENDANT'S MOTION TO DISMISS
## UNDER Fed. R. Civ. P. 12(b)(1) & (6)

### Oral Arguments Requested

---

[AMENDED/CORRECTED]
April 27, 2020

By:  Daniel W. Rudd (Plaintiff, Pro Se)
Filed and Served Electronically

# Table of Contents

Table of Contents ................................................................................................ 2

MOST PERTINENT AUTHORITIES ................................................................. 3

SUMMARY OF ARGUMENT .............................................................................. 4

ARGUMENT ......................................................................................................... 10

I.    This Court has Jurisdiction. ........................................................................ 10

   A.    Rudd's *official capacity* claims are properly stated. .................................. 11

   B.    Plaintiff is not seeking review of state court judgments. ........................... 15

   C.    Plaintiff's claims are not time barred. ........................................................ 18

   D.    The issues raised in this lawsuit were not litigated in the Michigan Court of Appeals. ................. 18

II.   Plaintiff has sufficiently pled violations of the First Amendment. .......... 21

   A.    Plaintiff has sufficiently alleged protected conduct. .................................. 23

   B.    Plaintiff has alleged adverse actions & causation. .................................... 24

      Official Capacity Claims (Count 1) ........................................................... 25

      Non Judicial Conduct (Count 2) ................................................................ 26

   C.    The January 13, 2017 confrontation was not a judicial act ........................ 29

   D.    The August 7, 2017 Confrontation was not judicial in nature. ................... 31

   E.    Judge Pittman's Admin. Policies and Executive Actions do not constitute judicial conduct. ........ 33

   F.    Judge Pittman's Correspondence to Judge Marietti was not judicial in nature. ........................... 35

III.  Defendant has failed to state a basis for absolute judicial immunity ......... 36

IV.   Judge Pittman is not entitled to qualified immunity .................................. 37

V.    Judge Pittman is not entitled to immunity under Michigan Law. .............. 37

VI.   Dismissal of Counts 5 & 6 would be premature. ....................................... 38

**CONCLUSION** ............................................................................................... 40

## MOST PERTINENT AUTHORITIES

### First Amendment Retaliation Standards:

*Fritz v. Charter Township of Comstock*, 592 F.3d 718 (6th Cir. 2010)

*Holzemer v. City of Memphis*, 621 F.3d 512, 520-23 (6th Cir. 2010)

*Okwedy v. Molinari*, 333 F.3d 339, 342 (2d Cir. 2003).

*Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999)

### Judicial Immunity & Non-Judicial Acts

*Barrett v. Harrington*, 130 F.3d 246 (6th Cir. 1997)

*Forrester v. White*, 484 U.S. 219, 225, 108 S.Ct. 538, 543 (1988)

*Morrison v. Lipscomb*, 877 F.2d 463 (6th Cir. 1989).

*Stump v. Sparkman*, 435 U.S. 349, (1978).

### Collateral Estoppel and Issue Preclusion

*United States v. Cinemark USA, Inc.*, 348 F.3d 569, 583 (6th Cir. 2003).

### Official Capacity Claims for Prospective Relief

*Ex parte Young*, 209 U.S. 123 (1908)

## SUMMARY OF ARGUMENT

This Court has undoubtedly received no shortage of pro-se complaints seeking relief from parenting time and/or custody provisions in state court judgements. This is not that case. Although the Defendant is a sitting family court judge, Plaintiff Daniel Rudd ("Rudd"), is not complaining of adverse custody rulings.

Defendant, the Honorable Gregory C. Pittman ("Judge Pittman"), has afforded Plaintiff Rudd favorable rulings on all substantial custody and parenting time issues. Rudd was awarded sole legal and sole physical custody of his children in 2014. Even when forced to proceed without counsel (November 2015 through the present) Rudd successfully defended several motions seeking modifications of the orders. After more than eight years of intense litigation scrutiny (including investigations, evaluations, hours of evidentiary hearings and hundreds of docket entries), Rudd claims there are no evidentiary findings which would reflect poorly on his character, honesty, or his treatment of the opposing party (the non-custodial mother).

However, in spite of Rudd's exemplary conduct, Judge Pittman began expressing disdain for Plaintiff's persistence in advocating for the safety and stability of the minor children (and also Plaintiff's petitioning activity in other forums). As a result of this animus, Judge Pittman began using family court proceedings as a vehicle to punish Rudd and suppress protected conduct. As it pertains to retaliatory actions which occurred during the course of official proceedings and/or judicial rulings, Judge Pittman's immunity may preclude damages or injunctive relief. However, this Court can still issue prospective relief in the form of a declaratory judgement against Judge Pittman in his official capacity (See **Count 1,** Complaint PageID.7-10).

4

Under **Count 2,** Rudd describes two separate occasions where Judge Pittman deliberately stepped outside of his judicial role for the purpose of confronting Rudd *man to man.* Rudd alleges that Judge Pittman's denigrating comments did not resemble any adjudicative or dispute-resolution function. Rather, Judge Pittman was attempting to intimidate and prevent Rudd from continuing to engage in protected conduct. (Complaint, ECF No. 1, PageID.10-15).

Defendant deflects with arguments premised on a different version of the facts. In the narrative offered by Judge Pittman, Rudd's exemplary conduct in the litigation is replaced with vexatious litigation, deficient pleadings, and schemes to deprive the opposing party of her due process (and parental) rights.[1] These factual challenges are improper on a motion to dismiss.

Similarly, Defendant offers up a sanitized version of Judge Pittman's *man to man* confrontation on January 13, 2017. The Complaint alleges that Judge Pittman detained Rudd outside of any scheduled court proceeding in order to "demean, threaten and disparage" Rudd; "*often raising his voice or resorting to profane outbursts*" which were not focused on "any bad conduct or parental shortcomings"; but rather Judge Pittman's "strong distaste for Rudd's persistent advocacy." (Complaint, ¶¶46-48, PageID.11)

In contrast, Judge Pittman claims that Plaintiff has described an *unremarkable* judicial "conference"—necessary for "managing the case or admonishing Rudd regarding conduct that Judge Pittman deemed inappropriate or deficient." (Def. Brief, PageID.87-88 ECF No. 8-1).

---

[1] Defendant argues that "Rudd faults Judge Pittman for giving consideration to the arguments of Rudd's opponent; [and demands] "indiscriminate favoritism towards Rudd's positions." & "Rudd cannot wield the Constitution as a weapon to deny the rights of the mother." (PageID.85, Fn.1)

These arguments directly contradict Plaintiff's factual allegations in several ways.[2] While a judge can (and should) reign in litigation misconduct, Rudd's Complaint is replete with factual allegations precluding any suggestion that such admonishments were ever directed at Plaintiff's conduct or filings.

> (¶16) Judge Pittman knew that Plaintiff's position was perfectly aligned with the government's interest in protecting children from risk and instability [and] also knew Plaintiff's position was well-grounded in the applicable legal authorities.  (PageID.5)

> (¶30) …If Plaintiff's advocacy was ever improper in some way, Judge Pittman should have addressed the issue directly by way of specific judicial order (e.g. contempt or sanctions).   (PageID.8)

> (¶49) … Judge Pittman relentlessly disparaged and ridiculed Plaintiff. ***This criticism did not focus on any bad conduct*** or parental shortcoming; Judge Pittman primarily stated his strong distaste for Plaintiff's persistent advocacy. (PageID.10)

Under the Rule 12(b)(6) standard it is Plaintiff's version of the facts which must prevail. However, even if Defendant's contradictory facts were accepted as true (which they must not be at this stage), admonishments of this nature would not be considered the type "paradigmatic judicial acts" which are afforded a "simple and non-controversial" application of absolute judicial immunity.

> The application of judicial immunity is simple and non-controversial when applied to "paradigmatic judicial acts," or acts of actual adjudication, i.e., acts involved in resolving disputes between parties who have invoked the jurisdiction of the court.

---

[2] Plaintiff has specifically alleged that this was not a settlement conference and offered detailed facts to support his assertion. See Complaint PageID.13, ¶¶58-59 and Fn.8.  Also, the underlying premise ("Rudd was acting as his own attorney") ignores the distinctions between a private citizen's compulsory participation in court proceedings and a professional advocate who is representing a client.   See ***Mezibov v. Allen***, 411 F.3d 712 (6th Cir. 2005) at 717-720.

***Barrett v. Harrington***, 130 F.3d 246 (6th Cir. 1997) at 255. Admonishing attorney misconduct does not adjudicate rights or resolve the disputes between parties—thus making the application of immunity a more complicated question.

> The touchstone for judicial immunity is the function dispute resolution, or of authoritatively adjudicating private rights. Consequently, "anytime an action taken by a judge is not an adjudication between parties, it is less likely that the act is a judicial one."

***Id.*** (internal cites omitted). The doctrine of absolute judicial immunity serves an important role in our legal system. However, when a judge is acting outside of the bounds of paradigmatic judicial functions, immunity must serve its intended purpose (to ensure the ability of judges to fearlessly and independently **adjudicate** disputes):

> Despite the reverence for judicial immunity, the Supreme Court has been 'quite sparing' in their recognition of the doctrine of absolute immunity, and has refused to extend it any 'further than its justification would warrant,' and furthermore, '***the official seeking the immunity bears the burden of showing that such immunity is justified for the function in question.***'"

***Barrett v. Harrington,*** at 254. Under the appropriate two-part *functional* analysis the definition of a judicial act relates to **[1]** "the nature of the act itself, i.e., whether it is a function normally performed by a judge," and **[2]** "to the *expectations of the parties*, i.e., whether they dealt with the judge in his judicial capacity." ***Stump v. Sparkman***, 435 U.S. 349, (1978).

Defendant has failed to carry this burden—especially as it pertains to the self-described "*man to man*" confrontation on January 13, 2017. Plaintiff claims the "function in question" was discouraging Plaintiff from seeking "adjudicative

remedies;"[3] *pressuring* Plaintiff to withdraw allegations of attorney misconduct;[4] and chilling Plaintiff's protected conduct in other settings.   For this allegations the *two-part functional* analysis from **Stump v. Sparkman** is critical:

(1) Judge Pittman must show that his *off the record* "man to man" threats, profanity, and disparagement of Plaintiff's good-faith protected conduct served to forward some **function** which was *judicial in nature* (ordinarily performed by a judge;

(2) Judge Pittman must show that, "to the expectations of the parties," an unrepresented non-lawyer in Plaintiff's position would have "expectations" that he "dealt with the judge in his official capacity"—in spite of "Judge Pittman repeatedly [stating] his intent to address Plaintiff "off the record", outside the courtroom and "man to man."  (Complaint at ¶45 and ¶50)

Defendant has not addressed Plaintiff's allegation that Judge Pittman specifically deemed his threats and reprisals "man to man" communications.  Nor has Defendant addressed the pertinent case law (although it was cited in the Complaint footnotes).

Similarly, Defendant has not addressed the substance of Plaintiff's claims that Judge Pittman used his administrative authority to effectuate adverse actions against Plaintiff.  Under **Count 3,** Rudd describes administrative acts and polices which Judge Pittman established to discourage and obstruct Rudd's efforts to access judicial relief by filing papers and scheduling hearings.  (Id. PageID.16-19).  **Count 4** describes Judge Pittman's heavy-handed intervention in proceedings which were under another judge's jurisdiction. In this instance, Judge Pittman relied on his

---

[3] ¶47 ¶49 (PageID.11) ¶57 ¶49 (PageID.13)  Plaintiff's Complaint, ECF No.1

[4] (¶56) "…Judge Pittman disparaged Plaintiff for the 'crazy' suggestion that an attorney could be held in contempt or sanctioned for [encouraging the client to violate the orders]; clearly conveying that no request for sanctions would ever be considered." (PageID.13).

governmental influence to hinder Plaintiff's access to judicial remedies while also sending a strong chilling message to Plaintiff.  See e.g. ¶126 at PageId.24:

> (¶126) Judge Pittman did not conceal his efforts to interfere with Judge Marietti's proceedings because Judge Pittman wanted Plaintiff to appreciate the unofficial chain of command in Muskegon County. This realization would serve to chill Plaintiff's resolve to continue seeking relief from higher courts.

Defendant's cursory treatment of allegations regarding administrative and executive acts falls well short of the required showing. "Acts and decisions which are not judicial or adjudicative, i.e., acts and decisions performed and made by a judge which are administrative or legislative, *even though they may be essential to the very functioning of the courts*, have not ... been regarded as judicial." **Forrester v. White,** 484 U.S. 219, 225, 108 S.Ct. 538, 543 (1988) at 228.  In every instance where Judge Pittman *could have* "managed the litigation" by way of a judicial order—but instead resorted to administrative, executive, or rule-making authority—it will be "less likely that the act is a judicial one." **Morrison v. Lipscomb**, 877 F.2d 463 (6th Cir. 1989).

This lawsuit alleges constitutional violations which are separate and distinct from any ruling or judgment issued in family court; making the *Rooker Feldman* doctrine and *domestic relations exception* inapplicable. Contrary to Defendant's representations, these issues were not presented to or "litigated" before the Michigan Court of Appeals.  Neither qualified immunity or Michigan's statutory immunity will cover bad-faith conduct occurring outside the scope and function of Judge Pittman's judicial authority.   Plaintiff respectfully asks this honorable Court  to  deny Defendant's motion in full.

## ARGUMENT

Plaintiff Rudd filed suit to vindicate his right to petition the government without fear of reprisal or adverse action from Judge Pittman. Defendant has moved to dismiss on jurisdictional grounds and also asserts various forms of immunity. However, none of these challenges afford the appropriate deference to Plaintiff's well-plead factual allegations.

At bottom, Defendant is presenting a counter-narrative which directly contradicts Plaintiff's factual allegations. Defendant is entitled to present his own version of these events, however, a motion to dismiss under Rule 12(b)(6) is not the proper vehicle for doing this. If Judge Pittman wishes to *prove* different facts, he should file a motion for summary disposition under Rule 56. For *pleading* his own version of the facts, an *Answer* must be filed—this Court should order Judge Pittman to do just that. Plaintiff respectfully asks that Defendant's motion be denied.

## I.      This Court has Jurisdiction.

Plaintiff has stated colorable claims against Judge Pittman in his individual capacity (for non-judicial acts) and for prospective declaratory relief in his official capacity. In challenging these claims, Defendant relies on distortions of the pleadings and innuendo. Judge Pittman's subjective belief that Plaintiff's allegations are not "outside the bounds of normal management of litigation and litigants" (PageID.90) does not override this Court's "virtually unflagging obligation" to exercise jurisdiction over constitutional claims. ***Colorado River Water Conservation Dist. v. United States***, 424 U.S. 800, 817 (1976). "Just as a pitcher cannot call his own balls and strikes, [Judge Pittman] cannot trespass upon the court's province to 'say what the law is.'" ***Marbury v. Madison***, 5 U.S. 137, 177, 2 L. Ed. 60 (1803).

### A.     Rudd's *official capacity* claims are properly stated.

Defendant acknowledges that "*Ex Parte Young* 'allows plaintiffs to bring claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations." The same section conveys awareness that damages are sought under *separately* stated claims against Judge Pittman for non-judicial acts in his *individual capacity*. (Def. Brief, PageID.76)

Rather than explaining why some specific portion of the Complaint runs afoul of these designations, Defendant dismisses these distinctions as "mere labeling" and offers up a caricaturized version of the relief which Plaintiff is seeking.

> …But Rudd does, in fact, dispute Judge Pittman's past rulings – *particularly insisting that Judge Pittman violated Rudd's rights by giving consideration to the interest of his children's "non-custodial mother"* and by denying even greater sanctions against the mother and her attorney. Relief in those regards would be retrospective.

(Def. Brief PageID.75, ¶1, italics added).  Plaintiff certainly has not asked this Court for "retrospective" sanctions.  Both parties acknowledge that Rudd already obtained relief on this issue from the state appellate courts (ECF No. 8-3).  Plaintiff's claim for prospective relief is clearly stated.  Rudd wants a declaration that he has a right to petition in good faith without reprisals or retribution.

(¶23) In open court and in his written opinions, Judge Pittman has repeatedly gone out of his way to disparage Plaintiff for engaging in protected conduct.

(¶24) Judge Pittman has also conveyed that legal and equitable remedies will not be available to Plaintiff **_because_** Judge Pittman *disfavors Plaintiff's approach to petitioning the court (i.e. "litigiousness").*

(¶25) [The] August 25, 2017 Opinion [denied] longstanding requests for a hearing on attorney fees … [acknowledging] Plaintiff's good faith advocacy … but [placing] a heavier emphasis on Judge Pittman's animus toward Plaintiff's "litigiousness" (i.e. persistent advocacy in court).

(¶28) The language of Judge Pittman's September 25, 2018 Opinion indicates that Plaintiff's protected conduct was a substantial reason for the delays in establishing child support obligations... [explaining]:

> "*Due to the highly litigious nature of this case*, this Court exercised its recognized discretion to designate August 25, 2017 as the effective date for all pending considerations related to this case."

(Complaint PageID.7)  According to Rudd, "litigiousness" is Judge Pittman's chosen euphemism for discretely signaling disdain for Rudd's protected conduct (i.e. Rudd's insistence on following the orders, reports to law enforcement, allegations of attorney misconduct, appeals, etc.).   By invoking "litigiousness" and similar pejorative narratives, Judge Pittman sends out a thinly veiled notification:   Rudd is being punished and/or will be punished because of his protected conduct.  See Id. PageID.8.

> (¶31) Because of colloquies which had previously occurred on the record, Judge Pittman knew that Plaintiff would understand what was meant by this reference to "the highly litigious nature of the case." The reference to Plaintiff's protected conduct was intended to operate as a prior restraint on future petitioning activity.

In moving for dismissal, Judge Pittman asserts a version of the facts in which Rudd has only engaged in the *pretext* of petitioning activity—with the *actual* intention of trampling the non-custodial mother's constitutional rights.

What can be gleaned from Plaintiff Rudd's lengthy Complaint is that Rudd adamantly opposes any and all actions by Judge Pittman that would afford any consideration to the interests of his children's "non-custodial mother" in the custody arrangements and/or parental involvement.

**To this end**, *Rudd asserts that he has been "persistent in asking Judge Pittman to enforce his own orders and issue sanctions for violations" by the non-custodial mother.* (PageID.3, Compl,, ¶¶ 9-11).[5]

---

[5] The quotes are drawn from Rudd's Complaint at ¶¶9-11 Importantly, Defendant has added "by the mother" to the end of Plaintiff's statements.  Read in context, the implication is that Plaintiff

(Def. Brief PageID.69 emphasis added).  The portion of the Complaint Defendant cites to (¶¶9-11) conveys that Judge Pittman established therapeutic requirements for the mother in order to "to ensure the safety and welfare" of the minor children (¶8). Rudd claims the mother's attorneys created hardship by encouraging violations of these orders and initiating baseless litigation. (¶¶10-11 & see Fn.13, p.30 of this brief).

> (¶11) As hardships intensified, Plaintiff became more persistent in asking Judge Pittman to enforce his own orders and issue sanctions for violations.

If Judge Pittman's version of the facts is correct, then Plaintiff's conduct would not be entitled to any protection under the First Amendment. Plaintiff agrees that no person should be permitted to "wield the Constitution as a weapon to deny the rights of" any other person.[6]  However, at the Rule 12(b)(6) stage, these competing factual narratives only serve to demonstrate *why* declaratory relief is necessary in this case.

As it pertains to the allegations at ¶11, Rudd seeks a judgement declaring whether his "persistent" requests for enforcement of the orders constitutes good-faith *protected conduct,* or *bad-faith* litigiousness.  This is exactly the type of prospective relief contemplated by ***Ex parte Young***, 209 U.S. 123 (1908).  This Court can and should prospectively decree that good faith petitioning activity cannot be the basis for adverse treatment, hostility, or the denial of any benefit which would otherwise be available from the government.  See Complaint at ¶¶36-40, PageID.9-10.

Judge Pittman's counter-narrative shows an *ongoing dispute* between the parties.  Defendant contends that Plaintiff's arguments for prospective declaratory relief are actually an extension of Rudd's bad-faith conduct in family court:

---

was seeking sanctions against **the mother's attorneys** for encouraging their client to violate the orders and initiate baseless litigation.

[6] See Defendant's footnote 1 at ECF NO. 8-1, PageID.85.

> [What] Plaintiff Rudd demands "prospectively" is a guarantee that Judge Pittman will always rule in accordance with Plaintiff Rudd's asserted positions in future Family Court proceedings involving his children - - both procedurally and substantively.
>
> In effect, Plaintiff Rudd demands to be the judge of his own case in any future proceedings, with Judge Pittman entering orders as Plaintiff Rudd sees fit.
>
> There is no authority for Rudd's proposition that Ex-Parte Young entitles Rudd to a guarantee of favorable future rulings in child custody litigation. Nor can the rights and interest of the non-custodial mother be so presumptively negated.

(PageID.76) In other words, Rudd's federal lawsuit is purportedly an attempt to control Judge Pittman for the purpose of inflicting *greater* harms on the non-custodial mother in the state court proceedings.[7]

Under the standards of Rule 12(b)(6), Judge Pittman's narrative must give way to Plaintiff's claim that "there has never been a credible suggestion that **any** of Plaintiff's petitioning activity was brought in bad faith." (¶14 PageID.4)  Plaintiff also alleges "the absence of any suggestion that Plaintiff's decision making was… adverse to the mother's relationship with the children." (¶54, PageID.12) These allegations of good-faith conduct are stated broadly, but they are not conclusory.  Ample factual support is stated throughout the Complaint—much of which can be validated by existing court documents.

> (¶13) Plaintiff's claims and advocacy for the children has consistently been validated as appropriate and necessary. There has never been any kind of evidentiary ruling which reflects poorly on Plaintiff's character or parental fitness.

---

[7] If taken seriously, Judge Pittman's theory of the case gives rise to some very troubling questions: If Judge Pittman believes Rudd is harming the non-custodial mother through this extraordinary manipulation of the legal system, why would Judge Pittman wait until this moment to expose Rudd's sinister hidden agenda? Why have there been no sanctions against Rudd?  Have all three of the mother's very experienced attorneys collected their fees while allowing a *naive* "self-represented layman" (Def Brief, PageID.85) to game the system for more than five years?

(Id.)  Defendant has not identified any portion of Plaintiff's Complaint which supports the inference that Rudd has ever, or would ever "demand" control over a sitting judge. There is no support for the inflammatory suggestion that Rudd desires to infringe upon the constitutional rights of others.

In contrast, Plaintiff's allegations convey a persistent concern for the integrity of the legal system and respect for the law.  Defendant's contradictory claims are implausible in light of the favorable state-court rulings Plaintiff has received.  More importantly, alternative facts are not a properly considered on a motion to dismiss.

### B.   Plaintiff is not seeking review of state court judgments.

While the Sixth Circuit continues to cast skeptical glances toward **Rooker** and **Feldman**, Defendant spends two pages arguing for an expansion of the disfavored doctrine.[8]  These arguments are also premised on mischaracterizations of the pleadings.  Plaintiff respectfully asks this Court to review what is *actually* stated in Plaintiff's Complaint, as opposed to the decontextualized phrases which Defendant presents.   For example, Defendant cites ¶12 while attempting to *redefine* the "substantive foundation of Plaintiff Rudd's claims."  (see highlighted sections below)

> There can be no dispute that Plaintiff Rudd ties his supposed "injury" to the allegedly invalid application of law by Judge Pittman. The substantive foundation of Plaintiff Rudd's claims is that Judge Pittman has "refused to follow the applicable legal standards" in handling Plaintiff Rudd's child custody case (ECF No. 1, PageID.3, Complaint, ¶ 12) - - both procedurally (e.g., scheduling and filing) and substantively (e.g., "written opinions" and "delayed . . . remedies").

(Def. Brief at PageId.77). But this decontextualized citation is very misleading.

---

[8] See **VanderKodde v. Mary Jane M. Elliott, P.C**., No. 19-1091 (6th Cir. Feb. 26, 2020) & **Van Hoven v. Buckles & Buckles, P.L.C.**, No. 18-2399 (6th Cir. Jan. 16, 2020) for two recent admonishments regarding the narrow scope of *Rooker Feldman* applicability.

Along with the surrounding allegations, paragraphs 12 is stated to describe various types of protected conduct (petitioning activity) which Judge Pittman disfavored. Defendant seizes upon a phrase which only describes **"When"** Rudd's protected conduct occurred, pulls it from context and distorts the "substantive foundation of Plaintiff Rudd's claims."

> (¶12) When Judge Pittman refused to follow the applicable legal standards, Plaintiff turned to the Michigan Judicial Tenure Commission and the Michigan Court of Appeals for help.

> (¶14) *The **examples of petitioning activity**, briefly described in paragraphs 7-13*, all fall squarely within First Amendment Protections. There has never been a credible suggestion that any of Plaintiff's petitioning activity was brought in bad faith.

**(Complaint,** PageID.4**)**   Plaintiff's actual claim is succinctly stated in the same section (and throughout the complaint). Plaintiff is challenging retaliatory *conduct*.

> (**¶15**) Nonetheless, Judge Pittman developed a strong distaste for Plaintiff's petitioning activity in family court and in other settings. Over time, Judge Pittman began using court proceedings as a venue for discouraging, punishing and suppressing Plaintiff's protected conduct.

Defendant also excludes the portion of ¶12 describing Rudd's successful bid for relief from the Michigan Court of Appeals.  All of this belies any suggestion that Rudd is a "state court loser" *covertly* seeking appellate review. Courts determine "whether Rooker-Feldman bars a claim by looking to the 'source of the injury *the plaintiff alleges* in the federal complaint.'" ***Evans v. Cordray***, 424 F. App'x 537 (6th Cir. 2011) at 538, citing to ***McCormick v. Braverman***, 451 F.3d 382, 393 (6th Cir. 2006).

> If the source of the plaintiff's injury is the state-court judgment itself, then the Rooker-Feldman doctrine bars the federal claim. Id., "If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim."

*Evans,* at 538.   The cause of action in this lawsuit arises independently from Judge Pittman's departure from "the applicable legal standards."  First Amendment injury arose at each point where Judge Pittman conveyed a connection between adverse treatment/rulings and Rudd's protected conduct. Defendant has not identified any adverse state court ruling which Plaintiff seeks to overturn.  This lawsuit properly alleges independent constitutional claims which arise from Judge Pittman's conduct—not his rulings.

Defendant's arguments regarding the ***domestic relations exception*** face the same hurdles. Defendant has not cited a case which is applicable to the factual allegations in this lawsuit.  In a more recent opinion, the Sixth Circuit clarified that the *domestic relations exception* does not apply unless "a plaintiff positively sues in federal court for divorce, alimony, or child custody." ***Chevalier v. Estate of Kimberly Barnhart***, 803 F.3d 789 (6th Cir. 2015) at 795, which also cites to ***Ankenbrandt v. Richards***, 504 U.S. 689 (1992). In ***Ankenbrandt*** our Supreme Court held that "abstention is inappropriate here, where the status of the domestic relationship has been determined as a matter of state law and, in any event, has no bearing on the underlying torts alleged.") ***Id.***  The same is true of the present case.

17

### C.   Plaintiff's claims are not time barred.

Under Rule 12(b)(6), Defendant seeks dismissal of claims which are outside the three-year statute of limitations.  Generally, this period "commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." ***Ratt v. Corrigan***, 989 F. Supp. 2d 550 (E.D. Mich. 2013).  At this early stage in the litigation, the date of accrual may not be clear for some claims.  However, the conduct giving rise to the central claims in the lawsuit occurred on or after January 13, 2017.  Plaintiff's factual allegations regarding events and conduct occurring prior to that date may be relevant to this controversy even if that specific conduct is not independently actionable.

### D.   The precise issues raised in this lawsuit were not presented or ruled upon in the Michigan Court of Appeals.

Defendant has attached two opinions from the Michigan Court of Appeals (ECF Nos. 8-3 & 8-4).  One of these opinions was discussed in Plaintiff's Complaint, however, the appeal was limited to the issue of attorney fees.  Plaintiff prevailed in having Judge Pittman's ruling reversed, but the appeal was limited to the issue of attorney fees.  An appellant who prevails in obtaining a remand may request a different judge on reassignment, however this is ancillary consideration and the request is rarely granted in domestic relations cases.[9] In arguing for collateral estoppel, Defendant relies on selective citations to portray a broad review (see Fn11).

---

[9] There is a heavy presumption toward a judge's duty to sit in child custody proceedings.  Any arguments for reassignment take up limited briefing space and must be limited to portions of the record relevant to the attorney fee rulings.  The narrow scope of consideration is emphasized just prior to Defendant's selective quotation: "Lastly plaintiff argues that this case should be remanded to a different judge under MCR 2.003(C) ***because the judge made statements on the record that indicated a bias against him as well as a bias against granting contempt and sanction relief.***" (See Defendant's Exhibit A, ECF No. 8-3, PageID.99, ¶1)

As described above, Plaintiff Rudd presented to the Michigan Court of Appeals his accusations of improper conduct by Judge Pittman. The Court of Appeals expressly ruled that "the record fails to show that the judge had a personal or extrajudicial bias against Plaintiff [Rudd]." (Ex A: Rudd v. Averill, No.340135 12/18/18  [PageID.99]).

Although not a "party" or "privy" of a party in that prior case, Judge Pittman can make defensive use of collateral estoppel against Plaintiff Rudd in the present case, because the issue of Judge Pittman's supposed bias against Plaintiff was directly ruled upon by the Michigan Court of Appeals in Plaintiff Rudd's appeal.

(Def Brief, PageID.80-81) The *precise issue* in this lawsuit is not Judge Pittman's "bias against Plaintiff." Plaintiff's allegations of retaliation and animus toward protected conduct were certainly not considered, decided or discussed by the Michigan Court of Appeals and have never been litigated in *any* trial court.  The Court of Appeals did rule that "the record fails to show the judge had a personal or extrajudicial bias against Plaintiff [Rudd]."  It would not have been possible for Plaintiff to develop a record, conduct discovery, or establish the merits of his First Amendment claims during the course of the custody litigation.

> The Sixth Circuit has established a four-part test for determining whether and when collateral estoppel bars relitigation of an issue:
>
> > 1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;
> >
> > 2) determination of the issue must have been necessary to the outcome of the prior proceeding;
> >
> > 3) the prior proceeding must have resulted in a final judgment on the merits; and
> >
> > 4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*United States v. Cinemark USA, Inc.*, 348 F.3d 569, 583 (6th Cir. 2003). [10]

---

[10] Defendant's expansive reliance on judicial notice of extrinsic documents also exceeds what is permissible on a pleadings challenge. *Mills v. Barnard*, 869 F.3d 473 (6th Cir. 2017) at 486.

On its face, the Court of Appeals Opinion presented by Defendant does not include any discussion of the claims and misconduct which form the basis of Plaintiff's lawsuit against Judge Pittman.  Yet Defendant's brief is replete with suggestions that a wide range of Judge Pittman's conduct was carefully examined by the Court of Appeals and adjudicated in Judge Pittman's favor.

> Even assuming arguendo that Judge Pittman had some negative influence upon Judge Marietti, Plaintiff Rudd makes no suggestion of any influence by Judge Pittman upon the judges of the Michigan Court of Appeals. ***He presented his allegations regarding Judge Pittman to them***. The appellate panel did not see any bias or any ground for disqualification. …   Had the Michigan Court of Appeals viewed Judge Pittman's actions as "extreme and outrageous," that court would have granted disqualification. But the appellate judges rejected Rudd's characterization of Judge Pitman's actions.

(Id. PageID.72; see also PageID.86; & PageID.89) Judicial notice does not allow a party to bootstrap this kind of speculation onto purported "facts" when more than one interpretation could arise.  This is a Rule 12(b)(6) motion. Any favorable inferences must flow in the other direction.  Overall, the December 12, 2018 Opinion (ECF No. 8-3) does *not* present Judge Pittman's conduct in a favorable light. However, the Court of Appeals was only tasked with identifying Judge Pittman's legal error in denying attorney fees.  Plaintiff had no opportunity to argue (let alone litigate) any of the claims presented in this lawsuit.  Every argument Defendant premises upon judicial notice of these documents should be excluded from this Court's consideration.

## II.     Plaintiff has sufficiently pled violations of the First Amendment.

In determining whether Plaintiff has sufficiently stated claims, this Court should "use a three-step process." ***Doe v. Baum***, 903 F.3d 575, 580 (6th Cir. 2018)

> First, the court must accept all of the plaintiff's factual allegations as true. Second, the court must draw all reasonable inferences in the plaintiff's favor. And third, the court must take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief.
>
> If it is at all plausible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his complaint, the case proceeds.

***Id.*** at 581 (internal citations omitted). The First Amendment forbids the government from suppressing or punishing those who have petitioned for redress of grievances. "Retaliation for the exercise of rights guaranteed by the Petition Clause are governed by the same test that applies to the Free Speech Clause." ***Holzemer v. City of Memphis***, 621 F.3d 512, 520-23 (6th Cir. 2010). At the pleading stage, Plaintiff's factual allegations must show: "**(1)** [he] engaged in constitutionally protected conduct; **(2)** an adverse action was taken against [him] that *would deter a person of ordinary firmnes*s from continuing to engage in that conduct; and **(3)** the adverse action was motivated at least in part by the plaintiff's protected conduct. ***Bright v. Gallia County***, 753 F.3d 639, 653 (6th Cir. 2014).

Defendant begins with a flawed understanding of the First Amendment Retaliation framework and carries this forward throughout the brief:

> First, Plaintiff Rudd repeatedly asserts that the Defendant, the Hon. Gregory C. Pittman, has denied and chilled Rudd's access to the courts. Yet Rudd recites in detail how he has, in fact, repeatedly continued to press his claims in Judge Pittman's court (and now in this Court). Second, Rudd acknowledges that he has been "the prevailing party in the state court litigation" overseen by Judge Pittman. To the extent that Judge Pittman did not originally award certain fees and costs demanded by Rudd in the state-court litigation, this was reversed on appeal.

> … Demonstrably, Plaintiff Rudd has not been denied access to the state courts. Nor has Rudd been denied substantive relief by the state courts. There is no basis for Rudd to demand any relief in this court…

(Def. Brief, ECF No. 8-1, PageID.68, internal cites omitted).  The Sixth Circuit has consistently rejected this type of error.  "The issue is whether a person of ordinary firmness would be deterred, not whether [the plaintiff] himself ***actually*** was deterred." ***Thomas v. Eby***, 481 F.3d 434, 441 (6th Cir. 2007) at 441.  Defendant presents a similar argument at PageID.71:

> Plaintiff Rudd asserts that "[a] person of ordinary firmness would certainly have diminished resolve to seek relief" from a judge acting in the manner that Judge Pittman allegedly did. Manifestly, however, Plaintiff Rudd's resolve has never been "diminished" at all.

This is a factual challenge.  While Rudd can objectively show "diminished" petitioning activity, this is not an "Access to Courts" claim (most often brought by prisoners who must show that government conduct directly obstructed or hindered their ability to pursue some non-frivolous underlying legal claim).  Under Plaintiff's primary theory (First Amendment Retaliation), any conduct which obstructed access to the courts is evaluated like any other adverse action.

> The plaintiff need not show that the retaliatory action itself amounted to a constitutional violation, just that the action was taken in retaliation for the plaintiff's exercise of his constitutionally protected rights; in this case, his right of access to the courts.

***Berryman v. Rieger***, 150 F.3d 561, 567 (6th Cir.1998) at 568.  "[A]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." ***Bloch v. Ribar***, 156 F.3d 673, 682 (6th Cir.1998).

### A.     Plaintiff has sufficiently alleged protected conduct.

"The threshold question in a right-to-petition case under the First Amendment case-law of this and other circuits is … `whether the plaintiffs conduct deserves constitutional protection.'" ***Campbell v. PMI Food Equip. Group***, 509 F.3d 776, 789 (6th Cir. 2007).  "The plain language of the First Amendment makes clear that a `petition' triggers the amendment's protections." ***Id.***  "It has long been recognized that the lawful resort to the courts is part of the First Amendment right to petition the Government for a redress of grievances." ***Berryman v. Rieger***, at 568.   (See pages 11-12 of this brief discussing and citing some allegations of protected conduct)

Defendant relies on unsupported innuendo to suggest some kind of malicious intent, bad-faith conduct or impropriety (see next section).  However, this speculation <u>contradicts</u> Rudd's factual allegations (instead of crediting them as true).  Beyond these collateral attacks, Defendant does not raise any direct challenge to Plaintiff's claim that his advocacy in court, reports to law enforcement, efforts to address attorney misconduct, complaints to the JTC, and his participation in other court proceedings –all constitute protected conduct under the First Amendment.

### B.      Plaintiff has alleged adverse actions & causation.

Plaintiff will address the 2nd and 3rd prongs of the Retaliation Analysis together in this section (adverse action and retaliatory motivation).  Because Rudd "is not a public employee, official, or prisoner … the level of injury [he] must allege would be the lower limit of a cognizable injury for a First Amendment retaliation claim." *Fritz v. Charter Township of Comstock*, 592 F.3d 718 (6th Cir. 2010) at 724.

> The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable.

*Bloch* at 679-680, citing to *Bart v. Telford*, 677 F.2d 622 (7th Cir.1982). Although Plaintiff's allegations include inherent evidence of retaliatory animus (e.g. the "litigiousness" narrative), there is no "heightened pleading requirement" for showing a causal connection. Plaintiff need only establish a prima facie showing "that his protected conduct was a motivating factor behind any harm." *Thaddeus-X*, citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977).

Although Defendant disagrees that Plaintiff's conduct was truly good-faith petitioning activity, there does not appear to be any disagreement that Judge Pittman disfavored and opposed the conduct and tendencies which Judge Pittman labeled "zealous advocacy", "litigiousness" or being too "rigid."

## Official Capacity Claims (Count 1)

Under **Count 1**, Plaintiff alleges that Judge Pittman "has repeatedly gone out of his way to disparage Plaintiff for engaging in protected conduct … and also conveyed that legal and equitable remedies will not be available to Plaintiff ***because*** Judge Pittman *disfavors Plaintiff's approach to petitioning the court (i.e. "litigiousness")."* (**¶¶23-24**, **PageID.7**). While withholding the appropriate legal remedies, Judge Pittman's rulings "acknowledged Plaintiff's good faith advocacy … but [placed] a heavier emphasis on Judge Pittman's animus toward Plaintiff's "litigiousness" (i.e. persistent advocacy in court)." (Id. **¶25**).   By laboring to convey his disdain for Rudd's protected conduct (under the chosen pejorative of "litigiousness") Judge Pittman effectuated a chilling effect by correlating adverse actions to Rudd's petitioning activity.  For example:

(¶28) The language of Judge Pittman's September 25, 2018 Opinion indicates that Plaintiff's protected conduct was a substantial reason for the delays in establishing child support obligations. Judge Pittman also eliminated a majority of the support obligations which should have accrued during these delays.  The Sept. 25, 2018 Opinion explains:

> **Due to the highly litigious nature of this case**, this Court exercised its recognized discretion to designate August 25, 2017 as the effective date for all pending considerations related to this case. (emphasis added)

(¶29) Because of colloquies which had previously occurred on the record, Judge Pittman knew that Plaintiff would understand what was meant by this reference to 'the highly litigious nature of the case.' The reference to Plaintiff's protected conduct was intended to operate as a prior restraint on future petitioning activity.

(¶34) In the context of a parent who has been advocating in the face of threats, domestic violence, false allegations, and financial hardship, Judge Pittman's disparaging rhetoric alone could certainly chill an ordinary person's resolve.

(**PageID.8-9**).  Much of the conduct described in Count 1 will be closely tied to "paradigmatic judicial functions" (i.e. issue orders and resolving disputes).  For these *official capacity* claims, a declaratory judgement is needed to settle the ongoing dispute between the parties.   Plaintiff claims his persistent requests, zealous advocacy, reports to law enforcement and other petitioning activity constitutes good-faith protected conduct. Judge Pittman calls the same conduct "litigiousness" and considers it to be an appropriate basis for punitive action.  As discussed in Section I.(A) of this brief, this is an ongoing dispute which requires prospective relief.

### Non Judicial Conduct (Count 2)

Under **Count 2 (¶¶41-76)**, Plaintiff describes two separate occasions where Judge Pittman detained Plaintiff *outside of court proceedings* and for the purpose of expressing animus toward Plaintiff's petitioning activity.   During a scheduled hearing on January 13, 2017, Judge Pittman's anger toward Plaintiff's "zealous advocacy" reached a tipping point.  Frustrated with his inability to chill Plaintiff's petitioning activity *on the record,* Judge Pittman ended the scheduled hearing early and directed Plaintiff to appear in his office.  Over Plaintiff's repeated objections, Judge Pittman detained Plaintiff for an hour of threats and verbal abuse.   In responding to Plaintiff's requests to have all discussions "on the record", "Judge Pittman advised that he was in charge and that he was going to address Plaintiff 'man to man.'" (Complaint ¶45, PageID.11).  Also:

> (¶46) Judge Pittman then proceeded to demean, threaten and disparage Plaintiff; often raising his voice or resorting to profane outbursts.

> (¶47) To discourage Plaintiff's resolve to seek adjudicative remedies, Judge Pittman expressed profound disdain for Plaintiff as a person, and for the burden of presiding over Plaintiff's case.

(¶49) This criticism did not focus on any bad conduct or parental shortcoming; Judge Pittman primarily stated his strong distaste for Plaintiff's persistent advocacy.

(¶50) Judge Pittman knew that Plaintiff had good reason to advocate for adherence to the established orders and the statutory framework.

(¶51) Judge Pittman repeatedly warned that he could retroactively discard or nullify evidentiary rulings which had been established years ago—including those rulings which served as the basis for awarding Plaintiff sole custody of his children.

(¶53) Judge Pittman expressed that regardless of established orders, he would not allow Plaintiff to function as the parent with sole custody going forward.

(¶53) Judge Pittman emphasized his ability to manipulate the record (discard prior evidentiary rulings) and issue interlocutory orders which rendered Plaintiff's sole custody designation meaningless.

(Id. PageID.12)  Any parent of *at risk* children would recognize the extraordinary weight carried by threats of this nature—especially since they were "made in the <u>absence</u> of any suggestion that Plaintiff's decision making or parenting was inappropriate, adverse to the children's welfare, or adverse to the mother's relationship with the children." (Id. ¶54).[11]

Defendant also contradicts Plaintiff's factual allegations regarding the scope of Judge Pittman's threats and reprisals (going beyond the custody litigation):

> Whether "in chambers" or in "the reception area," all of the statements described by Rudd dealt with his custody litigation. Rudd describes no other substance or context.

(Def. Brief PageID.71, see also PageID.79) To the contrary, Rudd claims Judge Pittman pressured him to drop all complaints of attorney misconduct (e.g.¶56,

---

[11] See also ECF No. 8-3, PageID.98 ¶1 Here the Michigan Court of Appeals notes that the non-custodial mother never actually completed Judge Pittman's therapeutic process for mitigating the domestic violence and substance abuse issues in her home.

PageID.13). Generally, Judge Pittman expressed disdain for Plaintiff's "petitioning activity in family court *and in other settings."* (¶15 PageID.4, with sub-paragraphs setting forth more detailed examples outside the custody proceedings, see also ¶19). Judge Pittman's threats and reprisals focused on Plaintiff's "persistent advocacy" and ***not*** any "bad conduct or parental shortcoming." (¶49, PageID.11).

> (¶59) None of Judge Pittman's denigrating remarks served any adjudicative or judicial purpose. This was not an attempt to resolve any claims that were legitimately before the court.

(Complaint, PageID.13). Although he deliberately set aside his judicial function in order to confront Plaintiff "man to man," Judge Pittman still wielded all the power and influence which his governmental position afforded.  This power imbalance would have had a tremendous chilling effect on someone in Plaintiff's shoes regardless of whether it occurred in Judge Pittman's chambers, the lobby, or the grocery store parking lot.

"Even the threat of an adverse action can satisfy this element if the threat *is capable of deterring* a person of ordinary firmness from engaging in the protected conduct." ***Thaddeus-X v. Blatter***, 175 F.3d 378 (6th Cir. 1999) at 397.  A First Amendment violation arises when the "comments of a government official can reasonably be interpreted as intimating that some form of punishment or adverse regulatory action will follow the failure to accede to the official's request." ***Okwedy v. Molinari***, 333 F.3d 339, 342 (2d Cir. 2003).342 & 344. (also noting that the language of alleged threats must be viewed in the light most favorable to the Plaintiff on a motion to dismiss).

### C.   The January 13, 2017 confrontation was not a judicial act.

Although Judge Pittman's threats and reprisals on January 13, 2017 may have "involved" or related to Rudd's custody proceedings, the allegations show Judge Pittman was not adjudicating *or even addressing* any issue between the parties. For the present motion, Defendant "bears the burden of showing that such immunity is justified for the function in question." ***Barrett v. Harrington,*** at 254. When drawing the line "between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges" a two-part *functional* inquiry applies:

> First, we consider "the nature of the act itself, i.e., whether it is a function normally performed by a judge."

> Second, we consider "the expectations of the parties, i.e., whether they dealt with the judge in his official capacity." Stump, 435 at 362.

***Barrett v. Harrington***, citing ***Stump v. Sparkman.*** The second prong is critical and dispositive as it pertains to Judge Pittman's self-described "man to man" confrontations. A Judge may not step outside the robe and still enjoy the immunity it affords. Further, the *nature of the act itself* is antithetical to the function normally performed by a judge. More than once, on January 13, 2017, Judge Pittman stated his purposeful intention to address Plaintiff ***man to man*** and **apart *from the judicial proceedings*** which had been scheduled for that day (to occur in open court).[12] (¶45, PageID.11; ¶60 at PageID.14). Instead of addressing what Plaintiff has actually alleged, Defendant focuses on hypothetical *expectations* that some licensed attorney may have if he or she engaged in misconduct while representing their clients.

---

[12] MCR 2.401(A) governs pretrial, scheduling, discovery and settlement conferences. The language clearly precludes a judge from ordering *an unrepresented litigant* to appear for a conference with the judge. Also, the rule employs mandatory language in requiring that conferences be scheduled in advance and with reasonable notice to the parties.

---

…all of the statements and actions by Judge Pittman, including those outside the courtroom, specifically involved Plaintiff Rudd's child custody proceedings. To whatever extent Judge Pittman made statements or admonitions to Rudd, it must be remembered that Rudd was acting as his own attorney.

It is neither unusual, nor outside the scope of judicial action, for a judge to admonish an attorney about the quality of filings submitted to the court or the manner of an attorney's argumentation. The statements attributed by Plaintiff Rudd to Judge Pittman all fall within such bounds.

---

(Def. Brief, PageID.82). This scenario has no bearing on an analysis of the nature and function of Judge Pittman's conduct as alleged by Plaintiff.   Rudd claims exemplary conduct at all times (no basis for admonishment).  Rudd claims Judge Pittman forced him to defend years of baseless custody petitions while deliberately withholding the legal remedies which would allow Rudd be represented by an attorney.[13] Rudd was not an attorney, and was not acting as an attorney.[14]  This court must consider "the expectations of **the parties**, i.e., whether they dealt with the judge in his official capacity;" not the expectation a lawyer might have.

---

[13] See e.g. Complaint ¶15(e): "[on 9/8/15] Plaintiff advised Judge Pittman that the string of frivolous custody petitions have left him impoverished and unable to afford counsel going forward. Plaintiff's attorney urged Judge Pittman to follow the statutory framework, reign in litigation misconduct and conduct hearings on attorney fees (which are required by statute).
The transcript of this hearing, shows Judge Pittman's awareness that the non-custodial mother has repeatedly dragged everyone into court with false claims that all therapeutic requirements have been met." (PageID.5).  This was the last hearing where Plaintiff was able to be represented by an attorney. Michigan law requires an award of *need-based* attorney fees under these circumstances. Judge Pittman (to this day) refuses to rule on this issue.

[14] By definition, representing yourself is not the same thing as advocating for someone else. The difference is more stark when a non-lawyer is forced to proceed in pro per. Notably, a licensed attorney's conduct in representing a client does not receive the same First Amendment protections under the petitioning clause.  This distinction is discussed thoroughly in ***Mezibov v. Allen***, 411 F.3d 712 (6th Cir. 2005) at 717-720.

### D.     The August 7, 2017 Confrontation was not judicial in nature.

The August 7, 2017 confrontation did not "immediately follow" the events of January 13, 2017. (¶¶62-75, PageID.14-17) In this instance there were no hearings or proceedings scheduled and Plaintiff's business in the courthouse *only* involved court staff.  However, Judge Pittman observed Plaintiff headed toward the probate court office and seized the moment to initiate another "unwanted" *man to man* confrontation (¶73).

> The alleged statements by Judge Pittman in "the reception area" occurred immediately following this conference.  And despite Rudd's allegation that these were "personal and extrajudicial," these interactions are described by Rudd himself as dealing with "Plaintiff's request for attorney fees and child support that have been ignored" and the "scheduling" of hearings in the case, together with Judge Pittman's supposed "assumption that the Plaintiff's filings were nonsensical."

(**PageID.70**).   Defendant's partial quotations are taken out of context. Plaintiff's allegation do not "describe" Judge Pittman as "dealing with" any pending matters or "scheduling" anything. None of Judge Pittman's statements *functioned* toward resolving a pending issue *or* managing the docket.   Plaintiff had not asked for any explanations regarding the hearings which had not been scheduled. If there <u>had</u> been a need to discuss scheduling matters with Plaintiff, this would have been the job of court staff and not a function performed by a judge.

(¶71) No portion of Judge Pittman's conduct during the August 7, 2017 confrontation fulfilled any judicial function whatsoever. Ordinarily Judge Pittman's assistant handles the scheduling of hearings and conveys all information regarding that process. Judge Pittman did not provide any information or perform any function which required a judge. There was no rational basis for Judge Pittman to detain Plaintiff, to express any of his remarks, or to speak with Plaintiff man to man at all.

31

(Complaint, PageID.15). Plaintiff has also included factual details to support these allegations. Judge Pittman "told Plaintiff not to request hearing; suggested that Plaintiff needed to 'find a hobby;' projected his voice loudly for other employees to hear; was intentional about drawing other employees into an intimidating exchange with Plaintiff; walked down the hallway leafing through Plaintiff's filings, slapping the pages, and muttering 'what the FUCK?!?' (loud enough for Plaintiff to hear)." (¶¶63-70, PageID.14-PageID.15).

This conduct had nothing to do with resolving any pending considerations or managing the Judge Pittman's docket. There was no individualized consideration of the filings or the relief sought. Judge Pittman initiated this conversation for the sole purpose of communicating the correlation between Rudd's protected conduct and Judge Pittman's adverse administrative policies (e.g. "find a hobby"). See PageID.15:

> (¶72) Judge Pittman's derogatory opinions regarding Plaintiff were personal and extrajudicial. The confrontation and remarks only functioned to: (A) convey Judge Pittman's strong disapproval of Plaintiff's petitioning activity; (B) demean and intimidate Plaintiff; (C) chill Plaintiff's resolve to petition the courts.

In considering "the nature of the act itself" i.e. "whether it is a function normally performed by a judge," this circuit has also inquired whether the function is "a type of act normally performed **only** by judges." ***Stump v. Sparkman***, at 1108 (emphasis on "only" added by the 6th Circuit in ***Guercio v. Brody***, 911 F.2d 1179, 1189). Plaintiff has specifically alleged, "Ordinarily Judge Pittman's assistant handles the scheduling of hearings and conveys all information regarding that process. Judge Pittman did not provide any information or perform any function which required a judge." (¶72, PageID.17).

### E.    Judge Pittman's Administrative Policies and Executive Actions do not constitute judicial conduct.

As alleged under **Count 3**, Judge Pittman utilized his administrative and *rule-making* authority **in avoidance** of utilizing his judicial authority (i.e. entering an order). This goes beyond targeting Plaintiff for discriminatory treatment. By preventing any hearings from being set, Judge Pittman effectively closed the door on Rudd's access to judicial relief.  If Judge Pittman had used his judicial authority to enter an order which restricted Plaintiff's filings or governed the scheduling of hearings, Rudd would have had *notice* and an opportunity to seek appellate review. Further, Judge Pittman's administrative policy eliminated any individualized assessment of the relief being sought.  Child custody proceedings differ from most civil lawsuits in that a wide range of claims and relief may be sought as circumstances change over the years.  Without any consideration for *what* had been requested (or whether urgent relief may be necessary) Judge Pittman placed an indefinite *moratorium* on Plaintiff's access to the family court.  While this administrative policy was connected to a particular *litigation file* it was <u>not</u> connected to the litigation of any particular issue or cause of action.  Additionally, the impact of this policy spanned beyond the parties themselves (quashing any consideration of attorney sanctions).

> In ***Morrison v. Lipscomb***, 877 F.2d 463, 466 (6th Cir.1989), the Sixth Circuit explained that "simply because rule making and administrative authority has been delegated to the judiciary does not mean that acts pursuant to that authority are judicial." In ***Morrison***, the Sixth Circuit held that a state court judge's issuance of a moratorium on the issuance of writs of restitution was a non judicial act because it was an order not connected to any particular litigation. ***Id***. The Sixth Circuit stated:

>> We hold that judicial immunity does not apply. Any time an action taken by a judge is not an adjudication between parties, it is less likely that the act is a judicial one.

> [Judge] Shakoor's moratorium was a general order, not connected to any particular litigation. The order did not alter the rights and liabilities of any parties but, rather, instructed court personnel on how to process the petitions made to the court. This case differs from an adjudication in that a litigant offended by a judicial act can, in the vast majority of cases, appeal the court's decision to a higher court; here, no direct appeal is available, making the absence of judicial liability far less reasonable ... We hold, then, that the Shakoor order was an administrative, not judicial, act and that absolute immunity does not apply.

***Ratt v. Corrigan,*** 989 F. Supp. 2d 550 (E.D. Mich. 2013), at 560.  In his efforts to obstruct the scheduling of hearings, and to prevent the filing of papers with the clerk, Judge Pittman deliberately relied on his administrative authority instead of *acting as a judge* by issuing orders.  See ¶¶81-98 PageID.17-19.

> (¶97) Judge Pittman had broad discretion to manage his docket and the proceedings before him through judicial orders. If any of Plaintiff's filings were improper or frivolous, Judge Pittman should have issued rulings and orders to address those concerns. This has never occurred and there has never been a basis for such a ruling against Plaintiff.

> (¶98) Instead of acting in an adjudicative or judicial capacity, Judge Pittman acted administratively to interfere with Plaintiff's ability to access to judicial relief.

 "Acts and decisions which are not judicial or adjudicative ... *even though they may be essential to the very functioning of the courts*, have not ... been regarded as judicial."

***Forrester v. White***, 484 U.S. 219, 225, 108 S.Ct. 538, 543 (1988) at 228.  Here Judge Pittman could have relied on *judicial orders* but chose to rely on his administrative and supervisory authority instead.

**F.      Judge Pittman's Correspondence to Judge Marietti was not judicial in nature.**

The conduct set forth under **Count 4** is completely removed from any judicial function. (PageID.20-23).  Judge Pittman made himself an advocate in proceedings which had been assigned to another judge for *independent consideration*.  Judge Pittman used his considerable influence (as a government official) to influence the outcome of those proceedings.  Contrary to Defendant's bald assertions—there is no indication that the Michigan Court of Appeals gave these allegations any consideration. (See Section I.(D) regarding issue preclusion).  This would be more like the "letter writing" described in ***Barret v. Harrington*** at 257.

> Thus, the act of writing a letter of complaint to prosecuting authorities is distinguishable from these acts, as this type of conduct can, and usually is, undertaken by a citizen complainant or law enforcement personnel. Furthermore, the instigation of criminal proceedings, by definition, is not adjudicatory in nature and does not resolve a dispute between two parties, but rather initiates one.

***Id.*** However, in that case, Judge Harrington's letter ***functioned*** to preserve the integrity of the judicial process.  Judge Pittman's correspondence to Marietti served the opposite function. If anything, Judge Pittman was undermining the independence of another judge (Complaint ¶¶123-125, PageID.23).  Further:

> (¶124) Here, Judge Pittman's administrative acts were clearly intended to have an adverse impact upon Plaintiff's pursuit of meaningful and unbiased consideration before Judge Marietti.

> (¶126) Judge Pittman did not conceal his efforts to interfere with Judge Marietti's proceedings because Judge Pittman wanted Plaintiff to appreciate the unofficial chain of command in Muskegon County. This realization would serve to chill Plaintiff's resolve to continue seeking relief from higher courts.

### III.   Defendant has failed to state a basis for absolute judicial immunity under the facts which Plaintiff has alleged.

Defendant has presented conclusory justifications which *might* render Judge Pittman's conduct "judicial in nature" under a different set of circumstances and scenarios (e.g. admonitions to reign in misconduct by an *attorney*).  Defendant argues:

> …all of the statements and actions by Judge Pittman, including those outside the courtroom, specifically involved Plaintiff Rudd's child custody proceedings. To whatever extent Judge Pittman made statements or admonitions to Rudd, it must be remembered that Rudd was acting as his own attorney.
>
> It is neither unusual, nor outside the scope of judicial action, for a judge to admonish an attorney about the quality of filings submitted to the court or the manner of an attorney's argumentation. The statements attributed by Plaintiff Rudd to Judge Pittman all fall within such bounds.

(Def. Brief, PageID.82). As discussed previously (at pages 6 & 30), Plaintiff is not an attorney and was not engaged in any conduct requiring an admonishment. "The issue in a First Amendment retaliation claim is the grounds actually relied upon, not those that might have been relied upon by some other government agent in a similar situation." ***Holzemer v. City of Memphis***, 621 F.3d 512, 527 (6th Cir.2010)

> The record before us, however, is devoid of any evidence that Campbell actually relied on any of those other, alleged grounds. The issue in a First Amendment retaliation claim is the grounds actually relied upon, not those that might have been relied upon by some other government agent in a similar situation, and plaintiffs need only show that the action was taken "at least in part because of the exercise of the protected conduct."

***Id.***  At this stage the inquiry must focus on what Rudd has actually alleged not Defendant's alternative theories.[15]

_____

[15] Ferreting out the most likely reason for the defendants' actions is not appropriate at the pleadings stage"). ***Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.***, 648 F.3d 452, 458 (6th Cir. 2011).

### IV.   Judge Pittman is not entitled to qualified immunity

If the elements of First Amendment Retaliation have been sufficiently pled, allegations of retaliatory animus will usually close the door on qualified immunity at the pleading stage.  See ***Barrett v. Harrington***, 262-264. Defendant's reliance on ***Guercio v. Brody***, 911 F.2d 1179, 1189 (6th Cir. 1990) is misplaced. This very complex litigation was resolved on an extensive record at the summary judgement stage.[16] Further, qualified immunity would not preclude injunctive relief from Judge Pittman's "man to man" confrontations or conduct outside of his judicial authority. See ***Cnty. of Sacramento v. Lewis***, 523 U.S. 833, 841, n.5 (1998); nor would it preclude a declaratory judgement against Judge Pittman in his official capacity. ***Hall v. Tollett***, 128 F.3d 418, 430 (6th Cir. 1997)

### V.   Judge Pittman is not entitled to immunity under Michigan Law.

Defendant offers generalized conclusion that "all of the statements and actions described by Plaintiff Rudd are examples of common judicial practice in the management of litigation." (PageID.86) However, no discussion is rendered regarding the well-established barriers for immunizing *malicious* conduct which exceeded the scope of Judge Pittman's judicial authority. See ***Odom v. Wayne Co.***, 482 Mich. 459, 461, 760 N.W.2d 217 (2008).  Also see ***Ross v. Consumers Power Co.***, 410 Mich. 567, 634, 363 N.W.2d 641 (1984).  In the absence of undisputed or conclusive evidence that Judge Pittman honestly believed he was acting in good faith, this will be a fact question for the jury.  ***Karibian v. Paletta***, 122 Mich. App. 353, 359, 332.

---

[16] ***Guercio*** also involved the *Pickering Test* for public employees which does not apply to Plaintiff, a private citizen. This had a significant impact on the qualified immunity analysis in that case.

## VI.    Dismissal of Counts 5 & 6 would be premature.

**Counts 5 & 6** incorporate factual allegations and set forth additional theories of liability for the same conduct.   This is adequate to place Defendant on notice regarding the claims he is called upon to defend.   It would be premature to dismiss either of these claims while so many facts remain in dispute.   Defendant's arguments to the contrary come from cases decided at the summary judgement stage.[17] Defendant also misstates the ruling in ***Boone v. Spurgess*** regarding class of one claims.   (Plaintiff's Equal Protection claim **Count 5).** Defendant's "comparator" arguments are mistaken.

> …even a "class of one" equal protection claim requires pleading facts showing that the plaintiff suffered discriminatory treatment compared to "similarly situated" persons. *Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004).

(**PageID.88**). To the contrary, ***Boone v. Spurgess*** began by acknowledging the requirement Defendant states above. However, the ruling then goes on to state:

> This precedent, however, is completely undercut by the cryptically brief decision in ***Village of Willowbrook v. Olech***, in which the Supreme Court held that allegations that a municipality's demands for a larger easement than usual before connecting plaintiff to the municipal water supply were "sufficient to state a claim for relief under traditional equal protection analysis." … under ***Olech***, a plaintiff can also demonstrate that an actor had no reason at all — that the action had no rational basis.

***Boone v. Spurgess*** (citations abridged) at 932.  Rudd has asserted that others were allowed to seek enforcement of court orders, file papers with the clerk and schedule

---

[17] Defendant's Equal Protection arguments rely entirely on dispositions with a well-developed factual record (**PageID.88-89**).  *Harajli v. Huron Township*, *Stanislaw v. Thetford Twp.,* and ***Boone v. Spurgess*** were adjudicated at the summary judgment stage.  ***Warren v. City of Athens, Ohio***, 411 F.3d 697, 711 (6th Cir. 2005), reviewed a district court's granting of a permanent injunction; a ruling based documentary evidence, depositions, and expert witness testimony.

hearings (as allowed by the applicable authorities). Rudd has also alleged that, according to court records, there was no rational basis to justify subjecting Rudd to differential treatment. This position is well supported by factual allegations throughout the complaint.

Defendant also cites the (unpublished) ruling in ***Stanislaw v. Thetford Township***, 515 Fed. Appx. 501, 507 (6th Cir. 2013).[18] In that case, the *Stanislaw* Plaintiff started with allegations that the defendant township officials "routinely approved every other request for licensure by every other business that sought it." This allegation was sufficient at the pleadings stage. However, the *Stanislaw* Plaintiff subsequently failed to identify comparators *after* having a full opportunity to conduct discovery and depositions.

Defendant has not provided a sufficient basis for dismissal of Plaintiff's IIED claims (**Count 6**). Defendant describes an unrelated set of circumstances and subjectively draws a conclusory comparison. This cannot be dispositive.

> What Plaintiff Rudd alleges is neither extreme, nor outrageous. It is not even remarkable. Again, Plaintiff Rudd fails to identify any statement or action by Judge Pittman outside the bounds of normal management of litigation and litigants by a trial court judge.

(**PageID.90**). While it is concerning that Judge Pittman believes the *alleged* conduct to be unremarkable, the Defendant's subjective beliefs cannot form the basis for a dismissal at the pleading stage.

---

[18] p.10 Unpub: https://www.opn.ca6.uscourts.gov/opinions.pdf/13a0185n-06.pdf

## CONCLUSION

Defendant has failed to present any meaningful challenge to the claims which Plaintiff actually stated in his complaint. The arguments presented in contradiction to Plaintiff's factual allegations are not properly considered on a Rule 12(b)(6) motion. Plaintiff respectfully requests that Defendant's Motion to Dismiss be denied.

Respectfully Submitted
On April 27, 2020 [Amended/Corrected],


/s/ Daniel W. Rudd
Daniel William Rudd, Plaintiff Pro Se
201 S Lake Ave, Spring Lake, MI 49456
daniel@stock20.com  231-557-2532