UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

DANIEL W. RUDD,

        Plaintiff,

v.

GREGORY C. PITTMAN,

        Defendant.

Case No.  1:20-cv-27

Hon. Paul L. Maloney
*U.S. District Court Judge*
Hon. Sally J. Berens
*Magistrate Judge*

# PLAINTIFF'S SUR-REPLY
RE: Injury & Article III Standing

Defendant's challenge to Plaintiff's standing is primarily premised on a false dualism:

> Rudd never explains how Pittman has actually "punished" or "suppressed" him, in the midst of affording Rudd "favorable rulings on all substantial custody and parenting time issues."

(Reply Brief, ECF No. 20, PageID.243). Variations of this perceived "irony" punctate Defendant's dismissal filings. However, favorable rulings on the <u>substantive issues</u> of *custody* and *parenting time* does not preclude or contradict Rudd's claims that he was **also** subjected to adverse actions during the course of the litigation. This is not the first lawsuit to allege that a prevailing party was injured in the course of underlying litigation (see *Ex Parte Young* or virtually any malicious prosecution lawsuit). Further, Defendant's reductive analysis does not account for the unique nature of the litigation framework established under Mich. Comp. Laws § 722.21 et seq. As opposed to a typical lawsuit with a predefined scope of controversy, Michigan's "Child Custody Act, … ***is a comprehensive statutory scheme*** for resolving custody disputes." *Harvey v. Harvey*, 470 Mich. 186, 187, 680 N.W.2d 835, 836 (2004).

> It places an affirmative obligation on the circuit court to "declare the child's inherent rights and establish the rights and duties as to the *child's custody, support, and parenting time* in accordance with this act" whenever the court is required to adjudicate <u>an action</u> "involving dispute of a minor child's custody." Mich. Comp. Laws § 722.24(1). …Once a circuit court obtains jurisdiction over divorce proceedings, it retains that jurisdiction over custody and visitation matters until the child attains the age of 18. MCL 552.17a(1); MCL 722.27(1)(c);

*Id.*, 835-836 (emphasis added). Under the umbrellas of *legal* custody, *physical* custody, parenting time, and support, an extensive number of discrete claims are likely to arise while the family court maintains jurisdiction. The Michigan Court Rules devote Subchapter 3.200 to the specific rules and procedures governing various actions arising under these categories ***and*** "all proceedings that are ancillary or subsequent to" these issues. MCR 3.201(A). Among these provisions and "ancillary" proceedings actions may arise regarding attorney fees (retroactively or prospectively), enforcement of established provisions, contempt proceedings, sanctions, holiday parenting-time disputes, relocation, change of school, religious practices, medical care disputes (treatment plans;

medical providers; vaccines; nutrition), child support modifications, support enforcement, medical reimbursements, petitions for a parenting time coordinator, petitions for grand-parenting time, parental-abduction orders, emergency protective orders, transportation arrangements, third-party contact provisions/restrictions, and many other remedies made available under statute, court rule or common law.

When a family court judge refuses to appropriately enforce statutory requirements, unrestrained litigation can introduce severe hardship into the lives of children and parents alike. As a majority of the Supreme Court recognized in *Troxel v. Granville*, 530 U.S. 57 (2000), "the burden of litigating a domestic relations proceeding can itself be 'so disruptive of the parent-child relationship that the constitutional right of a custodial parent to make certain basic determinations for the child's welfare becomes implicated.'" *Id.* at 75 (approvingly citing to a portion of the dissent written by Justice Kennedy at 101). Justice Kennedy further elaborate that:

> If a single parent who is struggling to raise a child is faced with visitation demands from a third party, the attorney's fees alone might destroy her hopes and plans for the child's future.

*Id.* at 101. This reality runs parallel to the injuries described in the Complaint *and* in the sworn affidavit which Rudd executed under oath in August of 2017 (an affidavit which is incorporated into Plaintiff's federal Complaint by attachment):

> Judge Pittman has progressively enacted improvised provisions which essentially waives the statutory threshold requirements for changes in custody orders. This has allowed the opposing party to repeatedly file variations of the same claims in numerous motions to change custody for the last three years. The stress on myself and the children has been enormous and the legal fees have consumed all my savings, assets and available credit.

(Complaint Exhibit, ECF No. 1-1, PageID.30). While it's true that Rudd prevailed in being awarded sole legal and sole physical custody, these orders have little value if they are not enforced.

> [on 9/8/15] Plaintiff advised Judge Pittman that the string of frivolous custody petitions have left him impoverished and unable to afford counsel going forward. Plaintiff's attorney urged Judge Pittman to follow the statutory framework, reign in litigation misconduct and conduct hearings on attorney fees (which are required by statute). The transcript of this hearing, shows Judge Pittman's awareness that the non-custodial mother had repeatedly dragged everyone into court with false claims that all therapeutic requirements have been met.

(Complaint, ¶15(e) PageID.5). This was the last hearing where Plaintiff was able to be represented by an attorney. Michigan law requires an award of need-based attorney fees under these circumstances. Judge Pittman (to this day) refuses to rule on this issue—which also closes the door on appellate relief from the state courts.

Judge Pittman was also positioned as the gatekeeper for services from the Muskegon County Friend of Court, allowing him use his supervisory and executive authority to obstruct Plaintiff's access to federally funded (and federally mandated) services (without having to adjudicate anything). See e.g. Complaint ¶¶28-31, describing a retaliatory denial of federally funded and mandated government services (the establishment of support obligations)—and Judge Pittman's subsequent correlation of this adverse action to Plaintiff's litigiousness.

In his individual capacity, Judge Pittman is sued for initiating intimidating confrontations outside of court proceedings. On January 13, 2017 Judge Pittman detained Plaintiff for the self-declared purpose of addressing him "man to man" and *off the record.*

> … Judge Pittman relentlessly disparaged and ridiculed Plaintiff. This criticism did not focus on any bad conduct or parental shortcoming; Judge Pittman primarily stated his strong distaste for Plaintiff's persistent advocacy (¶49). Judge Pittman repeatedly warned that he could retroactively discard or nullify evidentiary rulings which had been established years ago—including those rulings which served as the basis for awarding Plaintiff sole custody of his children (¶51). Judge Pittman expressed that regardless of established orders, he would not allow Plaintiff to function as the parent with sole custody going forward (¶53). Judge Pittman emphasized his ability to manipulate the record (discard prior evidentiary rulings) and issue interlocutory orders which rendered Plaintiff's sole custody designation meaningless (¶53).

(Complaint, ECF No. 1, PageID.10-12) The chilling effect was compounded by the fact that these threats were issued "in the absence of any suggestion that Plaintiff's decision making or parenting was inappropriate, adverse to the children's welfare, or adverse to the mother's relationship with the children" (Id. ¶54). Instead of acting officially (in view of the public) Judge Pittman went off the record so he could *privately* lash out against conduct which Judge Pittman *knew* to be appropriate. These were threats of *indirect penalties* against conduct which Judge Pittman knew he could not *directly* prohibit (i.e Plaintiff's insistence on adherence to the statutory requirements and orders; Plaintiff's reports of attorney misconducts; Plaintiff's appeals; Plaintiff's protected

conduct in other settings). This violates the First Amendment under the *Unconstitutional Conditions* doctrine. See *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1077 (6th Cir. 1994); and *Toledo Area AFL–CIO Council v. Pizza* , 154 F.3d 307, 321 (6th Cir. 1998). Also see *Board of City Commisioners v. Umbehr*, 518 U.S. 668, 674–75, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996) discussing retrospective violations. Much like the injuries at Count 3:

> To further chill Plaintiff's resolve, and also to prevent Plaintiff from obtaining meaningful appellate review, JUDGE PITTMAN obstructed Plaintiff's access to the courts through administrative actions. JUDGE PITTMAN had allowed numerous requests for relief to languish for years. When Plaintiff became more insistent on a proper resolution of these matters (including attorney fees and child support), JUDGE PITTMAN instructed his staff to single Plaintiff out for differential treatment. Specifically, the staff was instructed to refrain from scheduling any hearings on relief sought by Plaintiff.

(Complaint ¶¶78-79) This wasn't an adjudication of a specific dispute between parties.  This was a comprehensive *moratorium* on **any** type of post-judgement relief, "ancillary" action, enforcement of orders, sanctions against attorney misconduct, or even emergency protection orders.  The impact went beyond the parties and this was done without any individualized judicial consideration of the relief sought. Judge Pittman's argument that this constitutes "case management" embodies the mentality which is harshly criticized by the Sixth Circuit in section III of *Morrison v. Lipscomb*, 877 F.2d 463 (6th Cir. 1989), at 467-469.

Although Judge Pittman's position of authority and influence certainly amplify the adverse impact of Judge Pittman's disparaging rhetoric, the factual allegations in Rudd's Complaint go well beyond name-calling. Rudd claims "litigiousness" was Judge Pittman's chosen pejorative to signal that adverse actions were the result of Plaintiff's disfavored petitioning activity.  The primary injury asserted throughout this lawsuit is a chilling effect on Plaintiff's ability to engage in protected conduct without fear of retaliation. It is well-settled that "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  Plaintiff has been subject to such losses repeatedly and for an extended period of time.  As stated in Rudd's Complaint, the injury is ongoing and immanent—not conjectural, hypothetical, or speculative:

> Plaintiff prospectively seeks relief from ongoing exposure to JUDGE PITTMAN'S irrational, abusive and demoralizing conduct. … JUDGE PITMAN will retain jurisdiction of post judgement issues and new controversies in Plaintiff's custody proceedings until at least April 2023. Based on the history of these proceedings, there is a reasonable likelihood of continued constitutional violations (including retaliation and prior restraints). Plaintiff seeks a judgement against JUDGE PITTMAN in his official capacity, declaring that JUDGE PITTMAN violated and continues to violate Plaintiff's constitutional rights by threatening adverse actions, effectuating adverse actions, and withholding government benefits in response to Plaintiff's protected conduct.

(Complaint ¶¶37-40). Plaintiff seeks declaratory relief to "define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act." *Justice Network Inc. v. Craighead Cnty.*, 931 F.3d 753 (8th Cir. 2019). at 764. In *Fieger v. Ferry*, 471 F.3d 637 (6th Cir. 2006), the Sixth Circuit conferred standing on an attorney who challenged the practices of Michigan Supreme Court justices based upon a significant chance that he would be appearing before them in future litigation. Although retrospective relief was unavailable regarding the justices' previous actions, the same *past conduct* was considered probative to show that future injury was likely.

> The significant possibility of future harm here is born of the Justices' past construction and application of the Michigan Recusal Rule. See *O'Shea v. Littleton*, 414 U.S. 488, 496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) ("[P]ast wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury.")

*Fieger* at 647. Here also, Judge Pittman's past conduct makes clear that there is a substantial likelihood of injury in the future. Judge Pittman's non-judicial conduct has caused (and continues to cause) immense hardship. This Court has an unflagging obligation to declare Plaintiff's right to engage in protected conduct without fear of retaliation by Judge Pittman.

Respectfully Submitted on June 1, 2020

/s/ Daniel William Rudd
Daniel William Rudd, Plaintiff (Pro Se)
201 S Lake Avenue, Spring Lake, MI 49456
daniel@stock20.com   * 231-557-2532
Filed and served via ECF as indicated by the timestamp